## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | **Case No. CR11-0143** |
| **vs.** | **ORDER FOR PRETRIAL** |
| **LYNN WILLIAM JOHNSTONE,** | **DETENTION** |
| **Defendant.** | |

On the 28th day of September, 2011, this matter came on for hearing on the Government's request to have the Defendant detained prior to trial. The Government was represented by Assistant United States Attorney Dan Chatham. The Defendant appeared personally and was represented by his attorney, John Jay Rausch.

## I. RELEVANT FACTS AND PROCEEDINGS

On September 20, 2011, Defendant Lynn William Johnstone was charged by Indictment (docket number 11) with conspiracy to distribute heroin within 1,000 feet of a school. At the arraignment on September 23, 2011, Defendant entered a plea of not guilty and trial was scheduled before Chief Judge Linda R. Reade on November 21, 2011.

At the hearing, Special Agent Darrell Simmons of the Iowa Division of Criminal Investigation testified regarding the circumstances underlying the instant charge. In September 2010, law enforcement became aware of Defendant's involvement in a heroin drug conspiracy through wire-tapped phone calls on a heroin supplier's cell phone. Defendant's role in the conspiracy included being a supplier of heroin and user of heroin. Simmons testified that "at least" 11 witnesses will testify regarding Defendant's role in the conspiracy. Simmons stated that each of these witnesses either purchased heroin directly

from Defendant, or Defendant arranged for the purchase of heroin at his house. Two witnesses will say that Defendant introduced them to heroin. Additionally, three of the witnesses have overdosed at Defendant's house, and one witness overdosed after purchasing heroin from Defendant.

On March 8, 2011, Defendant was involved in a controlled purchase of heroin. A confidential informant ("CI") went to Defendant's residence and purchased $100 worth of heroin from Defendant. On April 28, 2011, another controlled purchase of heroin was executed by a CI in the alley behind Defendant's house. Defendant was at his residence when the drug deal was arranged.

On July 1, 2011, Defendant was interviewed by law enforcement. Defendant identified nine drug dealers that he knew in the Cedar Rapids, Iowa, area. Defendant admitted obtaining heroin both for his personal use, and to distribute to others. Defendant further admitted using his residence to sell heroin. Lastly, Defendant admitted purchasing pseudoephedrine to sell to others to make methamphetamine.

According to the pretrial services report, Defendant is 53 years old. He is a lifelong resident of Cedar Rapids. Defendant's marital history is confusing and unclear. Defendant reported that he was married to Joy Johnstone from 1986 until she passed away in 2010. According to Defendant, they had four biological children and two adopted children. Two of the children are adults and reside in Iowa. Since March 2010, Defendant's four youngest children have resided in Bella Vista, Arkansas, with their maternal grandmother. Contrary to Defendant's report to the pretrial services officer, records from Iowa Correctional Services indicate that Defendant was married to Kelly Bena from 1991 to January 2004, and Defendant's children were from that relationship.

Defendant has been employed as a sheet metal worker since 1977. He informed the pretrial services officer that his job placements through the union fluctuate. He stated that his last union job was in April 2011. Defendant also reported that he also does free-lance sheet metal work, and claimed to have eight furnace installation jobs pending.

Defendant told the pretrial services officer that he suffers from "deteriorating disc disease" and underwent "laser valve heart surgery" in 2010. Defendant also reported receiving mental health treatment for grief and depression following the death of his wife, Joy Johnstone, in late 2010. Defendant stated that he experimented with marijuana between the ages of 13 and 15, and experimented with cocaine and hallucinogens in the 1980s, but denied any use of those drugs since that time. Defendant advised that he became a regular user of heroin in the last few years. Defendant engaged in inpatient substance abuse treatment and mental health treatment in 2010, and outpatient substance abuse treatment since July 2011.

Defendant has an extensive criminal history. In 1979, at age 20, he was arrested and later convicted of possession of a controlled substance. In 1980, Defendant was charged and later convicted of possession with intent to deliver a controlled substance. In 1981, Defendant was charged and later convicted of conspiracy to deliver cocaine. Initially, he received a deferred judgment. However, in May 1987, Defendant entered the Iowa Medical Classification Center for a 10-year term of imprisonment. He was paroled in June 1989. His parole was revoked in December 1989. He was paroled again in May 1990, but his parole was revoked for a second time in July 1990. He was paroled a third time in February 1991, and was discharged from parole in January 1992. At some time, while on parole in the conspiracy to deliver cocaine charge, Defendant was charged and later convicted of second degree fraudulent practice.[1] Defendant was sentenced to 5 years in prison which ran concurrently with the conspiracy to deliver cocaine term of imprisonment.

---

[1] According to the pretrial services report, Defendant was charged with second degree fraudulent practice on December 14, 1988. However, according to the information provided in the pretrial services report regarding the conspiracy to deliver cocaine charge, Defendant would have been in prison on December 14, 1988.

In November 1995, Defendant was charged and later convicted of fifth degree theft. In May 1996, Defendant was charged and later convicted of possession of a controlled substance.

In August 2003, Defendant was charged and later convicted of possession of a controlled substance, third offense. While that charge was pending, Defendant was arrested four additional times for violation of a no contact order (3 times) and interference with official acts. In February 2004, Defendant was given a 5-year suspended prison sentence on the drug charge. From August 17, 2004 to September 26, 2005, Defendant absconded from supervision. On August 25, 2004, a probation violation report was filed alleging that Defendant failed to maintain contact with his probation officer, failed to maintain employment, failed to submit to substance abuse testing on two separate occasions, failed to comply with substance abuse treatment, and provided three urinalysis samples which tested positive for the use of cocaine. Defendant was placed in a residential facility on November 9, 2005. A second probation violation report was filed on January 10, 2006, alleging that Defendant submitted to chemical testing which resulted in a BAC of .08 and was found using drugs with a syringe in his room at the Larry Nelson Center. Defendant was placed on escape status from April 20, 2006 to July 6, 2006. He was charged and later convicted of voluntary absence on July 6, 2006.

On September 25, 2009, Defendant was charged and later convicted of possession of drug paraphernalia. On July 1, 2011, Defendant was charged with possession of pseudoephedrine. A bench warrant was issued on September 9, 2011, but was recalled on September 16, 2011, and the case remains pending in state court. On August 22, 2011, Defendant was charged and later convicted of fifth degree theft.

## II. DISCUSSION

The release or detention of a defendant pending trial is governed by the Bail Reform Act of 1984, 18 U.S.C. § 3142. In *United States v. Salerno*, 481 U.S. 739 (1987), the United States Supreme Court upheld the constitutionality of the Bail Reform Act of 1984,

while noting that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id.* at 755.

## A. Legal Standard to be Applied

If the government moves to have a defendant detained prior to trial, the court must undertake a two-step inquiry. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). The Court must first determine by a preponderance of the evidence that the case involves an offense listed in 18 U.S.C. § 3142(f)(1), or that the defendant presents certain risk factors, as identified in § 3142(f)(2). *Id.* Once this determination has been made, the court then determines, pursuant to § 3142(e), whether any condition or combination of conditions will reasonably assure the defendant's appearance at trial and the safety of the community. *Id.*

Regarding the first step, pretrial detention is not authorized unless the Court finds that at least one of seven enumerated circumstances is applicable. 18 U.S.C. § 3142(f). The first five enumerated circumstances refer to "offense types," such as crimes of violence, offenses punishable by life imprisonment, serious drug offenses, felonies committed by repeat offenders, and felonies involving minor victims or guns. 18 U.S.C. § 3142(f)(1)(A-E). The last two enumerated circumstances where a hearing is authorized involve "risk factors," such as a serious risk of flight, or a serious risk the defendant will obstruct justice. 18 U.S.C. § 3142(f)(2)(A-B).

Regarding the second step, if following a hearing "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," then the judicial officer must order the defendant detained pending the trial. 18 U.S.C. § 3142(e). A finding that no condition or combination of conditions will reasonably assure the safety of the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that no condition or combination of conditions will reasonably assure the

defendant's appearance, however, must only be established by a preponderance of the evidence. *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985).

In determining whether any condition or combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community, the Court must take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including (a) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, and (b) whether, at the time of the current offense or arrest, the defendant was on probation, parole, or other pretrial release; and (4) the nature and seriousness of the danger to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). *See also United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003).

The Government has the burden of proof in this regard. It is aided in certain cases, however, by a rebuttable presumption found at 18 U.S.C. § 3142(e). For example, if the Court finds there is probable cause to believe that the person committed a drug offense for which a maximum term of imprisonment of ten years or more is applicable, or possessed a firearm in furtherance of a drug trafficking crime, or committed certain specified offenses involving a minor victim, then there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(e)(A)(B) and (E). In a "presumption case," the defendant bears a limited burden of production – not a burden of persuasion – to rebut the presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight. *Abad*, 350 F.3d at 797 (citing *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)). Once the defendant has met his burden of production relating to these two factors, the presumption favoring detention does not

disappear entirely, but remains a factor to be considered among those weighed by the court. *Id.* *See also United States v. Jessup*, 757 F.2d 378, 382-84 (1st Cir. 1985).

## B. Analysis

Turning to the facts in the instant action, Defendant is charged with conspiracy to distribute heroin within 1,000 feet of a school. Accordingly, regarding the first step in the analysis, the Court finds that detention is authorized pursuant to § 3142(f)(1)(C).

Regarding the second step, the weight of the evidence against Defendant is strong. On March 8, 2011, a CI purchased heroin directly from Defendant during a controlled drug transaction. On April 28, 2011, a controlled heroin purchase occurred in the alley behind Defendant's residence. Defendant was at his residence when the controlled drug purchase was arranged. Special Agent Simmons testified that numerous witnesses will testify that they purchased heroin directly from Defendant, or had Defendant arrange for the purchase of heroin at his residence. In an interview with law enforcement, Defendant admitted obtaining heroin for his personal use, and to distribute to others. Defendant also admitted that heroin was sold at his residence.

Obviously, the distribution of drugs constitutes a general danger to the community. This case is particularly illustrative, as three individuals have overdosed at Defendant's residence, and a fourth individual overdosed after purchasing heroin from Defendant. Defendant has an extensive criminal history, including multiple drug-related convictions, and a record of failing to comply with pretrial supervision, probation, and parole. If convicted on the instant charge, Defendant would face a mandatory minimum prison sentence of 10 years. The Court has no confidence that Defendant would comply with the terms and conditions it would impose if he were released. Therefore, based on the serious nature and circumstances of the offense, and the rebuttable presumption, the Court finds that Defendant should be detained pending trial.

Based on the legal standards set forth above, and considering the evidentiary factors found in 18 U.S.C. § 3142(g), the Court finds the Government has met its burden of

proving by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of Defendant as required. The Court further finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if Defendant is released. Therefore, pursuant to 18 U.S.C. § 3142(e), the Court concludes that Defendant should be detained prior to trial. Defendant was advised in open court of his right to file a motion with the District Court for revocation or amendment of this Order.

### III. ORDER

IT IS THEREFORE ORDERED as follows:

1.     The Defendant is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

2.     The Defendant shall be afforded reasonable opportunity for private consultation with counsel.

3.     On order of a Court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is confined shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

4.     The time from the Government's oral motion to detain (September 23, 2011) to the filing of this Ruling (September 28, 2011) shall be excluded in computing the time within which the trial must commence pursuant to the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(D).

DATED this 28th day of September, 2011.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA